IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADRIAN BARTOSZEWSKI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 17 C 5028 |
| | ) | |
| PAULINA BARTOSZEWSKI, | ) | Judge Virginia M. Kendall |
| | ) | Magistrate Judge Finnegan |
| Respondent. | ) | |

### REPORT AND RECOMMENDATION

Petitioner Adrian Bartoszewski, a Polish citizen, filed a Verified Complaint against his ex-wife, Respondent Paulina Bartoszewski, a citizen of both Poland and the United States, seeking to have their minor daughter returned from Illinois to Poland pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9000 *et seq*. On November 1, 2017, the district judge entered an Agreed Order setting forth the terms of the child's return to Poland. Petitioner now seeks to recover $2,208.11 in personal expenses and costs, and $8,880 in attorney's fees incurred in this case, for a total of $11,088.11. Respondent objects that fees are not appropriate since the parties agreed to the order of return. She also says the amounts claimed are excessive given that she never objected to returning her daughter to Poland. The district judge referred the matter to this Court for a report and recommendation. Based on a review of the parties' briefs and statements made during hearings before the district judge, this Court recommends that the request for fees be granted in the amount of $11,005.76.

**BACKGROUND**

Petitioner and Respondent married in December 2006, and their daughter A.B. was born in Poland in 2011. The family lived together in the Warsaw area for several years but the marriage ultimately was not successful. On May 19, 2015, the Bartoszewskis entered into a Parental Agreement Family Plan ("Family Plan") giving both parents the "right to exercise parental responsibility" as to A.B., whose registered place of residence was with Petitioner. Under the Family Plan, each parent had custody of A.B. on alternating weeks and jointly shared in raising and caring for her. The Bartoszewskis' June 2, 2015 final divorce decree of the Regional Court for Warsaw-Praga in Warsaw III Civil Division of the Republic of Poland incorporated the provisions of the Family Plan.

A.     **Respondent Takes A.B. to Illinois**

The shared custody arrangement apparently worked reasonably well until approximately April or May 2016 when Respondent started trying to get A.B. a Polish passport. Petitioner opposed Respondent's efforts and a Polish court denied the passport request on June 13, 2016, at least in part out of concern that Respondent would "move to the USA permanently" with A.B.[1] (Doc. 1, at 57). Respondent appealed the decision but also proceeded to obtain a U.S. passport for A.B. by falsely representing to the U.S. Embassy in Warsaw that Petitioner had signed the required consent form in front of a notary. In December 2016, Respondent withdrew her appeal and took A.B. to the United States. When Petitioner discovered what had happened, he notified the Warsaw police of a child abduction. The investigation soon stalled, however, as the police confronted

---

[1]     The Polish court noted that Respondent's mother lived in the U.S., Respondent had no family in Poland, and she was in a relationship with a U.S. national "with whom she has an 8-month-year-old son." (Doc. 1, at 56-57). For ease of reference, page numbers are drawn from the CM/ECF docket entries at the top of the filed document.

2

difficulty obtaining A.B.'s passport documents and a statement from Respondent. On February 10, 2017, Petitioner filed an Application for Return of the Child pursuant to the Hague Convention, which was transmitted to the United States Department of State on March 13, 2017.

### B. Illinois Court Proceedings

Petitioner filed a Verified Complaint in the United States District Court for the Northern District of Illinois on July 6, 2017, seeking to have A.B. (who was then in Schaumburg, Illinois with Respondent) returned to Poland. Shortly thereafter, on July 20, 2017, the U.S. Embassy in Warsaw sent Respondent a letter notifying her that the U.S. State Department had revoked A.B.'s passport because it had been obtained by fraud in that Petitioner had not in fact signed the necessary form as Respondent represented. (Doc. 29-5, at 1-2). On August 10, 2017, Judge Kendall ("the district judge") granted Petitioner's ex parte motion for a temporary restraining order ("TRO") prohibiting Respondent from removing A.B. from the court's jurisdiction pending a hearing on the merits of Petitioner's complaint. (Doc. 14). Respondent subsequently filed an appearance in the case and at an August 24, 2017 hearing before the district judge, her counsel reported that the parties agreed to continue the TRO while they tried to work out an agreed return order. (Doc. 15).

Negotiations were still underway at a September 27, 2017 court hearing, with one sticking point being whether A.B. should return to Poland before Christmas as Petitioner wanted, or after Christmas as Respondent wanted. The parties agreed to another extension of the TRO until October 18, 2017. (Doc. 17). In the meantime, on October 6, 2017, Petitioner filed a Motion to Set Expedited Hearing on the Merits of Petitioner's

3

Verified Complaint and Petition for Return of the Child. (Doc. 18). The motion stated that Respondent had made only "vague assurances" that she would cooperate in both getting A.B.'s passport and returning her to Poland, and had not agreed to any of Petitioner's specific provisions, including to return the child before December 25, 2017. (*Id.* ¶ 3).

At the October 18, 2017 hearing, the district judge granted Petitioner's motion and scheduled the expedited hearing for November 1, 2017. (Doc. 21). By agreement of the parties, the judge also set a settlement conference for October 19, 2017, but it was stricken the next day. (Docs. 22, 23). The record does not reflect the reason for this. The day of the November 1, 2017 hearing, Petitioner filed a Motion for Judgment on the Pleadings, noting that Respondent had neither answered the Verified Complaint nor denied any of the allegations contained in it. (Doc. 24). Respondent told the district judge that while she did not admit any liability, she had never objected to returning A.B. to Poland, and the only outstanding issue was the date of her return.

### C. The Agreed Order of Return

After hearing the parties' arguments, the district judge granted Petitioner's motion for judgment on the pleadings, finding no reason to proceed with a hearing on the merits given Respondent's concession that she would return A.B. to Poland (though she would not agree there actually had been a wrongful removal), and that she had "no defense" to Petitioner's petition. (Doc. 26; Tr. 11/1/17, at 6). The judge also entered the parties' Agreed Order Directing Return of Minor Child to Country of Habitual Residence, with certain modifications. Of relevance here, the Order provided that Respondent was "responsible for all reasonable costs of travel for the Child and Petitioner, including but not limited to passport, visa, and round-trip airfare for Petitioner, to effectuate this order."

(Doc. 27 ¶ 6). During the hearing, the district judge made clear that this language would allow for payment of additional expenses as well, such as "an unforeseen need for a hotel, rental car, or whatever else may occur." (Tr. 11/1/17, at 13). The Order also set a time for Petitioner to file a fee petition. (Doc. 27 ¶ 11).

### D. The Fee Petition

Petitioner now seeks to recover $11,088.11 in fees, costs and expenses he incurred in securing A.B.'s return to Poland. Of this amount, $8,880 represents attorney fees for the 59.2 hours his attorney, Cristina Rizen, spent on this matter, at a rate of $150 per hour. (Doc. 29-4). The remaining $2,208.11 are costs and expenses as follows: $400 to file the Petition for Return of the Child; $77.50 for service of process on Respondent; $1,233.53 for translation of communications between Petitioner and his attorney and for translation of Polish court documents included in the Petition; $3.96 for Petitioner's passport; $167.49 for Petitioner's visa to travel to the U.S.; $3.14 for travel from Petitioner's home to the airport in Poland; $14.99 for food at the airport in Poland; $20.64 for travel from O'Hare International Airport to Petitioner's hotel; $223.66 for a two-night hotel stay; $14.86 for Petitioner's travel from the hotel to O'Hare; $21.25 for dinner with A.B. prior to departure; and $27.09 for meals during a layover at Heathrow Airport. (Doc. 29, at 2-3). Petitioner has attached receipts for all of these expenses. (Doc. 29-2; Doc. 29-3). Respondent argues that the Court should decline to order the payment of any fees and costs, or at a minimum award a lower amount.

### DISCUSSION

"The Hague Convention seeks 'to secure the prompt return of children wrongfully removed to or retained in any Contracting State' and 'to ensure that rights of custody and

5

of access under the law of one Contracting State are effectively respected in the other Contracting States.'" *Chafin v. Chafin*, 568 U.S. 165, 168 (2013) (quoting Art. 1, S. Treaty Doc. No. 99-11, at 7). Congress established procedures for implementing the Hague Convention in ICARA, which directs that children are to be "promptly returned" if courts find they have been "wrongfully removed or retained." *Id.* at 169 (citing 22 U.S.C. § 9001(a)(4)). ICARA also provides that

> [a]ny court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3). *See also Chafin*, 568 U.S. at 169. "The purpose of this section is 'to restore the applicant to the financial position he or she would have been in had there been no removal or retention . . .'" *Norinder v. Fuentes*, No. 10-CV-391-WDS, 2010 WL 4781149, at *1 (S.D. Ill. Nov. 17, 2010) (quoting Hague Convention, Test and Legal Analysis, 51 Fed. Reg. 10494-01, 10511 (Mar. 26, 1986)).

### A. An Agreed Order of Return Supports an Award of Fees and Expenses

Respondent does not argue that an award of fees and expenses in this case would be "clearly inappropriate." Instead, citing no authority, she suggests that an *agreed* order of return, such as the one entered here, does not constitute a court-imposed order of return as required to trigger the mandatory fee provision. (Doc. 36-1 ¶ 3). A similar argument failed in *Salazar v. Maimon*, 750 F.3d 514 (5th Cir. 2014). The plaintiff in *Salazar* filed suit against her ex-husband under ICARA seeking return of their minor child from Texas to Venezuela. *Id.* at 517. The parties ended up settling the matter, with the

father agreeing to voluntarily surrender the child into the custody of her mother, and the district court awarded the plaintiff necessary fees and expenses. *Id.*

On appeal, the father argued that the fee award was improper because there was never any judicial determination that he had wrongfully retained the child in the U.S. The Fifth Circuit rejected this argument, noting that nothing in the statutory language or legislative history of ICARA "conditions the court's obligation to award fees on a trial on the merits or upon a judicial determination that [the defendant] wrongfully retained the child within the United States." *Id.* at 520. In the court's view, since Section 9007(b)(3) of the statute "does not specify the type of court order that obliges the court to impose necessary fees," it is enough that the court "order[s] the return of a child pursuant to an action brought under the Convention." *Id. See also Onrust v. Larson*, No. 15 Civ. 122, 2015 WL 6971472, at *7 (S.D.N.Y. Nov. 10, 2015) (to receive a fee award under ICARA, "a party need not win at trial or summary judgment – a consent decree can suffice.").

Here, the district judge not only granted Petitioner's motion for judgment on the pleadings, (Doc. 26), but also entered an order (albeit agreed) requiring that A.B. be returned to Poland pursuant to the Hague Convention.² (Doc. 27). Under the analysis set forth in *Salazar*, which this Court finds persuasive, the district judge's order allows Petitioner to recover the necessary expenses he incurred as set forth under ICARA. Respondent's arguments to the contrary should be rejected.

**B.     Amount of Fees and Expenses**

Respondent argues that even if fees and expenses are awarded, the amount Petitioner is requesting is unreasonable. Looking first at the expenses, Respondent

---

²     Respondent's assertion that the district judge "neither conducted a hearing, nor ruled on Petitioner's Motion" is simply incorrect. (Doc. 36-1 ¶ 3).

7

objects that Petitioner "t[ook] the liberty, without leave of this Honorable Court, to have Petitioner testify via telephone with [a] translator, at a hearing [on November 1, 2017] that was not even necessary." (Doc. 36-1 ¶ 6). This Court agrees that Petitioner should not recover for any expenses he incurred appearing at the November 1, 2017 hearing without prior court approval. It appears from the receipts that the interpreter cost 300 PLN, (Doc. 29-2, at 3), and this amount (the equivalent of $82.35) should be deducted from the award.[3] Respondent does not challenge any other claimed expenses and they should be granted in full.

With respect to attorney's fees, courts considering Hague Convention cases generally use the lodestar method. *Norinder*, 2010 WL 4781149, at *1 (collecting cases). This entails "multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar amount may then be adjusted based on factors set forth in *Hensley*, but "[t]here is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Id.* Here, the Court recognizes that Ms. Rizen provided her services to Petitioner pro bono, but this does not make a fee award inappropriate. *See, e.g., Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010) ("Withholding fees from pro bono counsel would . . . discourage pro bono representation and undermine the Convention's policy of effective and speedy return of abducted children."). Respondent does not argue otherwise.

---

[3] PLN is the abbreviation for Polish Zloty which is the currency of Poland. In order to convert 300 PLN to dollars, the Court used a currency converter showing the historical exchange rate as of November 1, 2017. (https://www.exchange-rates.org/Rate/PLN/USD/11-1-2017, last visited 3/15/18). According to this converter, 300 PLN is the equivalent of $82.35.

Petitioner is seeking a rate of $150 per hour for Ms. Rizen. An attorney's reasonable hourly rate is "derived from the market rate for the services rendered." *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). The court presumes that an attorney's "actual billing rate for similar litigation is appropriate to use as the market rate." *Id*. The "next best evidence" of a reasonable market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id*. (quoting *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999)).

Ms. Rizen is a solo practitioner who has been specializing in family law and Hague Convention cases since obtaining her license in 2014. (https://www.rizenlaw.com/about/, last visited on 3/14/18). She has submitted an affidavit affirming that her normal billing rate in 2017 was $150 per hour, "which is commensurate with my education and experience." (Doc. 29-4, at 2). Respondent does not challenge this rate or argue that it is inconsistent with the rates charged by "similarly experienced attorneys in the community." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012)). This Court therefore recommends that Ms. Rizen be awarded $150 per hour as requested.

Turning to Ms. Rizen's hours, the Supreme Court has directed that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Respondent objects generally that "Petitioner's counsel treated this case as if it were contested and . . . Respondent was not cooperating with the terms of the Agreed order, thus incurring substantially unnecessary and excessive additional costs in the terms of

9

her hourly time put into this case." (Doc. 36-1 ¶ 6). During a hearing before the district judge on January 18, 2018, Respondent's counsel provided two examples. First, he questioned Ms. Rizen's request for 3 hours of time on August 24, 2017 to attend a court hearing. Second, he argued that any work performed after the Agreed Order was entered on November 1, 2017 was "almost panic by the attorney, you know, all – is excessive." (Tr. 1/18/18, at 6). Both objections should be overruled.

The attorney invoices show that the 3 hours billed on August 24, 2017 included not only the court hearing but also time spent drafting emails to Petitioner and to the U.S. State Department regarding passport issues. (Doc. 29-4, at 3). Respondent fails to explain what is improper about these activities, and the time should be allowed. As for billing entries dated after November 1, 2017, they all fairly reflect actions Ms. Rizen took to execute the return order and ensure A.B.'s return to Poland. (*Id.* at 3-4). Since Petitioner has failed to explain why specific time entries are excessive or unreasonable, this Court recommends that they all be allowed as well.

Respondent has not disputed any of the other billing entries in Ms. Rizen's invoices, or provided a cogent rationale for why the hours should be denied. In such circumstances, Respondent's generic objection that Petitioner incurred "substantially unnecessary and excessive" attorney's fees in the case should be overruled. *See U.S. v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015) (it is well-established in this circuit that "'perfunctory and undeveloped arguments' are deemed waived."). As for whether Respondent is able to pay a fee award, Petitioner claims that his ex-wife is "employed and capable of meeting her financial obligations." (Doc. 29, at 5). Respondent does not argue that paying the award would prevent her from caring for A.B. or otherwise impose

an undue hardship. *Cf. Norinder v. Fuentes*, 657 F.3d 526, 536 (7th Cir. 2011) (citing *Whallon v. Lynn*, 356 F.3d 138, 139 (1st Cir. 2004)) ("[A] fee award in a case under the Convention might be excessive and an abuse of discretion if it prevents the respondent-parent from caring for the child."). Petitioner's request for attorney's fees should therefore be granted in full.

## **CONCLUSION**

For the reasons stated above, this Court recommends that Petitioner's Motion Under 22 U.S.C. § 9007(b)(3) for Fees, Costs, and Expenses [29] be granted. Petitioner should be awarded $8,880 in attorneys' fees, and $2,125.76 in expenses and costs, for a total award of $11,005.76.

Pursuant to Fed. R. Civ. P. 72(a), specific written objections to this Report and Recommendation may be served and filed within fourteen (14) days from the date that this order is served. Failure to file objections with the Honorable Virginia M. Kendall within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the Report and Recommendation.

Dated: March 15, 2018

ENTER:

_____
SHEILA FINNEGAN
United States Magistrate Judge